**AFFIRM Opinion Filed March 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00334-CV**

**IN RE THE COMMITMENT OF SAMUEL MILTON DAUGHERTY**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV2270001**

## MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Kennedy

A jury found Samuel Milton Daugherty is a sexually violent predator, and the trial court entered judgment civilly committing him pursuant to Texas Health and Safety Code Chapter 841. In two issues, Daugherty argues the evidence is legally and factually insufficient to support the jury's determination and the trial court's judgment. We affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

### BACKGROUND

At the time of trial in January 2023, Daugherty was 63 years' old, had served 25 years of a 50-year sentence for aggravated sexual assault of a child under the age of 14, and had recently learned he had been granted parole.

As a juvenile, Daugherty engaged in shoplifting, skipping school, and on at least three occasions setting fires while playing with matches. By 13, he began to regularly consume beer and hard liquor. He also regularly used marijuana and experimented with a few other drugs he found he did not like. Admitting himself to be a "recovered alcoholic," Daugherty testified he had once lost a job due to drinking alcohol and had been convicted more than once for public intoxication—"anywhere from 18 all the way to . . . late 20s or early 30s"—and twice for driving while intoxicated. He also sold drugs a few times in small amounts. After Daugherty's first conviction for driving while intoxicated in 1990, he was placed on probation, which he violated by drinking while driving.

At around the age of fourth or fifth grade, Daugherty would look into the girls' restroom. By the age of 13 or 14, Daugherty began peeping into his neighbors' homes, looking for a window through which to see "[n]udity of some kind." He admitted he would then engage in masturbation outside of those windows and only stopped because of the difficulty to keep from getting caught by the neighborhood watch. In October 1979, when he was approximately 16 years old, Daugherty was charged with attempted burglary, during which he was looking for underwear to steal. He admitted to the offense and received two years of deferred adjudication. Daugherty admitted to wearing children's underwear that he purchased or found behind the washer and dryer in an apartment laundry room.

Daugherty admitted that beginning in his 20s through his 30s, he offended sexually against six children, including two children who were the complainants in two sexually violent offenses of which he was convicted. From approximately 1982 through 1993, Daugherty would go to public pools to take photographs of children for his own sexual gratification. He would also take photographs of friends' children and admitted some of those photographs were for his own sexual gratification. Daugherty's victims included the children of friends about whom he had fantasized and whom he groomed—"ma[de] . . . susceptible to [his] advances"—and strangers.

In 1993, Daugherty was arrested for offenses that occurred that year. In 1994, Daugherty was convicted in two cases for aggravated sexual assault against a child younger than 14 years and sentenced to ten years' deferred adjudication. The victim in both cases, D.B., was approximately seven years' old at the time of the offense and was the son of friends of Daugherty. That same year, Daugherty was convicted of the offense of indecency with a child younger than 17 years by contact and of the lawful possession of child pornography and sentenced to five years' imprisonment in each case. The victim in the indecency offense, T.J.B., was D.B.'s eight-year-old cousin. Daugherty was also convicted. After he served 180 days of his sentence, Daugherty was released on what is known as shock probation.

While on probation, Daugherty was ordered to refrain from contact with juveniles and to participate in a sex offender treatment program. Daugherty began such a program but was terminated for lack of progress, for failing several

–3–

polygraphs, and for having contact with a child. He also masturbated to the thoughts of children while he was in that program.

In 1997, the State moved to revoke Daugherty's probation, alleging he had violated the terms of his probation. In 1998, he was convicted of all four offenses and sentenced to five years' imprisonment in the indecency and pornography possession cases and 50 years' imprisonment in the aggravated assault cases. While imprisoned, Daugherty took many on-the-job trainings, including basic carpentry, furniture finishing, and upholstery. He also obtained a bachelor's degree, a master's degree in humanities, and an associate degree, as well as a doctorate degree in Christian education. In 2012, he became a member of the Messianic Jewish fellowship and became an elder in that congregation. Daugherty also participated in Voyagers and Cognitive Intervention programs, neither of which he was required to take. Despite his trainings, pursuit of education, and participation in programs, Daugherty continued to engage in masturbation while thinking about or viewing images of children and possessed images of naked children. He ceased doing so when he learned he had been granted parole in January 2022. Around that time, he also learned of the State's pursuit of a civil commitment proceeding and began a sex offender treatment program, which was a required condition of the parole grant.

In April 2022, the State filed a petition, alleging Daugherty is a sexually violent predator and requested that he be committed for treatment and supervision pursuant to Title 11, Chapter 841, of the Texas Health and Safety Code. The case

–4–

proceeded to trial before a jury, which took place in January 2023. At trial, Dr. Christine Reed, Ph. D. and Daugherty testified, and the State offered as evidence Dr. Reed's curriculum vitae, evidence of Daugherty's four 1998 convictions, and an excerpt of a letter Daugherty wrote to a friend of his, K.B., whom he had known since the third grade.

At trial Daugherty admitted he was "currently attracted to children" but that he did not want to be and that he used "techniques that I've learned to keep aberrant thoughts from becoming fantasies." Daugherty testified he had not yet completed the sex offender treatment he began in March or April of 2022, but that he was close to completing the program. When questioned about his ability to refrain from offending, Daugherty stated:

> I don't believe that I will ever touch another child. That thought is important to me, but I'm not going to say that the possibility is there, that I could engage in deviant behavior by masturbating to deviant fantasies.

Daugherty testified that, although drugs and alcohol are available in prison, he had not consumed either. He also stated that upon release, he planned on attending alcoholics anonymous meetings and obtaining employment in air conditioning, which he gained an associate's degree in prior to his imprisonment, or in upholstery or woodworking. Daugherty stated he did not believe he was likely to commit a sexually violent offense in the future and that he took responsibility for his actions against his victims, as well as the consequences his victims could face, including behavioral, legal, substance abuse, and psychological problems throughout their

lives. He explained that prior to learning of the grant of his parole, he had become eligible for parole after 12 and one half years of his sentence but that parole had been denied four times previously, such that he was beginning to think he would spend the rest of his life in prison.

Dr. Reed testified regarding her experience in forensic psychology practice, including competency to stand trial, sex offender risk assessments, and pre-employment assessments for police officers and firefighters. She evaluated Daugherty to assess whether he had a behavioral abnormality and testified as to her evaluation of him. She testified that, as part of her evaluation and before meeting Daugherty, she reviewed his offense records, prison records about any disciplinary issues, educational records, records from his participation in the sex offender treatment program, and his medical records. She indicated this type of historical information was important to review because "the best predictor of how someone's going to behave is how they behaved in the past." Dr. Reed met with Daugherty via video conferencing for approximately three and one half hours. After meeting with him, she also received and reviewed his December 20, 2022 deposition taken as part of the case. Dr. Reed testified that she found Daugherty has a behavioral abnormality that makes him likely to commit predatory acts of sexual violence.

The jury found beyond a reasonable doubt that Daugherty is a sexually violent predator. The trial court entered judgment in accordance with the jury's finding and ordered Daugherty civilly committed in accordance with Section 841.081 of the

Texas Health and Safety Code for treatment and supervision to commence upon his release from prison. Daugherty filed a motion for new trial, urging the evidence was legally and factually insufficient to support the jury's finding. This appeal followed.

## DISCUSSION

In his first and second issues, appellant urges the evidence is legally and factually insufficient to support what he characterizes as the "behavioral abnormality" element of the State's case. In reviewing legal sufficiency in sexually violent predator cases, we use the familiar criminal law standard: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Commitment of Stoddard*, 619 S.W.3d 665, 675 (Tex. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing factual sufficiency, our standard of review is "whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 678. In applying that standard, we "must detail why we conclude a reasonable factfinder could not have credited disputed evidence in favor of the finding." *Id.*

Daugherty contends the evidence supporting a finding he has a "behavioral abnormality" is legally insufficient, and that we must construe the legal definition of

–7–

that phrase in order to reach our holding in this case. *See* TEX. HEALTH & SAFETY CODE § 841.002(2) (defining "behavioral abnormality"). The bulk of his argument relies on the premise that the statute's "behavioral abnormality" definition is ambiguous, a premise we previously rejected. *See In re Commitment of Pero*, No. 05-21-01141-CV, 2023 WL 3881111, at *1 (Tex. App.—Dallas June 8, 2023, no pet.) (mem. op.). Daugherty does not address our prior panel decision, and even if he did so, we may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc. *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.). Accordingly, we decline Daugherty's invitation to construe Chapter 841's "behavioral abnormality" definition using the extrinsic, legislative history he cites.

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (i) is a "repeat sexually violent offender" and (ii) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *In re Commitment of Hill*, 621 S.W.3d 336, 339 (Tex. App.—Dallas 2021, no pet.) (quoting HEALTH & SAFETY §§ 841.003(a), 841.062(a)). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* (citing HEALTH & SAFETY §§ 841.003(b); 841.002(8) (defining "sexually violent offense")). The uncontested

evidence shows Daugherty has been convicted of two sexually violent offenses and sentence was imposed for each offense. Therefore, he is a repeat sexually violent offender.

A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." HEALTH & SAFETY § 841.002(2). A "predatory act" is an "act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

Daugherty argues that the evidence shows he is not a psychopath, has spent the last 25 years in prison where he has been well behaved and had made various efforts to rehabilitate himself, and was found by a parole panel to be "able and willing to fulfill the obligations of a law-abiding citizen" and that his release on parole is in "the best interest of society." He urges the evidence is legally and factually insufficient to support a finding that he "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." HEALTH & SAFETY § 841.003(a)(2).

As the State points out, there was no evidence to counter Dr. Reed's evaluation and diagnosis of Daugherty as having a "behavioral abnormality." More specifically, Dr. Reed testified that sexual deviance could be a congenital or acquired condition to support a finding of behavioral abnormality and that it was generally

–9–

chronic, not something that changes within a person's lifetime. She testified that she found Daugherty to be sexually deviant because of his history of engaging in pedophilic behaviors, his offenses against prepubescent children, and other sexual behaviors including voyeurism and fetishistic behavior. Dr. Reed testified that she found Daugherty to be sexually deviant at the time of trial because he acknowledged ongoing sexual thoughts and fantasies about prepubescent children.

Dr. Reed testified regarding Daugherty's sexual offenses, stating that the facts and details of those offenses were significant in determining whether he had a behavioral abnormality. That the offenses were against prepubescent children supported Dr. Reed's diagnosis of Daugherty with pedophilic disorder. D.B. was approximately seven years old and the child of one of Daugherty's friends. Daugherty would spend the night at D.B.'s home, especially when Daugherty was intoxicated. Over the course of approximately a year or two, Daugherty sexually abused D.B. by performing oral sex on him and penetrating D.B.'s anus with his penis. D.B. reported Daugherty took him outside to a shed outside the residence where Daugherty restrained him using chains, sexually abused him, and threatened D.B. with harm if he told anyone what had happened. Dr. Reed testified that while Daugherty admitted to most of the details of the offense, he did not admit to taking D.B. to a shed or restraining or threatening him. The fact that Daugherty admitted to some but not all of the details of his conduct against D.B. led Dr. Reed to conclude

–10–

that Daugherty was minimizing the more problematic aspects of the offense, which was considered a risk factor for reoffending.

As for Daugherty's second aggravated sexual assault offense, the victim T.J.B. was eight years old and D.B.'s cousin. Dr. Reed noted that Daugherty did not know T.J.B. well, that he was an acquaintance, which put Daugherty at a higher risk for reoffending. Daugherty was convicted of fondling T.J.B., of touching his genitals with his hand. Daugherty reported to Dr. Reed that, while performing oral sex on D.B., Daugherty saw fear in D.B.'s eyes, stopped the sexual attack against D.B. and went over to T.J.B. who was sleeping in the same general area and started performing oral sex and masturbating T.J.B. until T.J.B. woke up and told Daugherty to stop. Dr. Reed stated that she believed Daugherty had taken full responsibility for his offense against T.J.B., but she testified that Daugherty reported that even after being convicted for offending against these two children, Daugherty admitted to continuing to masturbate to thoughts of these same victims while he was in prison.

Dr. Reed testified regarding Daugherty's arrests for public intoxication and burglary and that she had learned that they were sexually motivated and involved violation of the rights of others for sexual arousal, thus supporting her determination he had a behavioral abnormality. Daugherty acknowledged to Dr. Reed that when he was arrested for public intoxication, "what he was actually doing was peeping in windows when it came to the attention of the police." These arrests and Daugherty's description of, on a weekly basis from his teenage years into his 20s, driving around

–11–

looking for windows to peep into and to masturbate while peeping into supported her diagnosis of voyeuristic disorder. She defined voyeurism as observing unsuspecting persons who are naked, in the process of disrobing, engaging in sexual activity, or using the restroom. Daugherty admitted to Dr. Reed that he had been looking for children on some of these occasions. As for Daugherty's arrest and conviction for burglary, he described that he had cut a screen in a door, so he could reach a bed inside to look under the pillow for underwear. That offense supported her diagnosis of Daugherty with fetishistic disorder, as well as Daugherty's admissions to her that he had a fetish for children's and women's underwear and would take them from the laundromat or buy them to masturbate with or to wear. Dr. Reed admitted this behavior did not directly harm a child, but it gave her more information about his sexual deviance, the thoughts he continued to have, and the sexual behaviors he engaged in.

During her testimony, Dr. Reed indicated she had identified several factors, in addition to those raised in her consideration of his past offenses, that indicated an increased risk of Daugherty's reoffending. One of those factors was Daugherty's creation, possession, and use of child pornography. He admitted to Dr. Reed that since he was in prison, he collected photos of children for the purpose of sexual gratification. According to Dr. Reed, that admission showed that, although he had received consequences for his behavior—his conviction for child pornography, he continued to engage in the sort of behavior for which he was punished. Another risk

factor was that the victims D.B. and T.J.B. were unrelated to him and that he admitted to offending against children who were strangers to him. According to Dr. Reed, "the research as shown that [offends against strangers] are more—I guess you could say more deviant, or that they lead to a higher risk for reoffending than someone that's offending within their own family." She explained that offending against a stranger was riskier behavior with more likelihood of getting caught. Dr. Reed testified that the fact that Daugherty engaged in sexual offenses, even as a juvenile—"the voyeurism, the peeping into windows, that sort of behavior"—and continuing those behaviors as an adult was a risk factor for reoffending. According to Dr. Reed, Daugherty admitted to offending while intoxicated, such that, despite his testimony that he had refrained from consuming alcohol or drugs while imprisoned, his past abuse of alcohol while offending put him at risk for reoffending in the future. She testified that drugs and alcohol are known to disinhibit behavior and impair judgment and ability to control impulses and thus play a role in reoffending. She further testified that even if Daugherty never relapsed and was able to refrain from the use of drugs and alcohol, he was still at risk of reoffending.

According to Dr. Reed, another risk factor for reoffending was Daugherty's preoccupation with sex. In support of that finding, she noted that his sexually deviant behaviors were "widespread in terms of peeping and the fetishistic behavior and preoccupation with pornography." She also referred to Daugherty's admissions

that he was sexually aroused by animals. Daugherty admitted during his testimony at trial to masturbating dogs and to fantasizing about horses mating.

Dr. Reed testified that the revocation of Daugherty's conditional release in 1998 was another risk factor for reoffending. She explained that revocation of conditional release indicates a person had been convicted, given consequences, given an opportunity to be in society and follow the rules, and reoffended, thus demonstrating an inability or difficulty in following the rules. She noted that in Daugherty's case, he had been kicked out of the sex offender treatment program that was a condition of his probation for admitting to continuing to masturbate to the thoughts of children and that he had had contact with a male under the age of 17.

Although Dr. Reed testified that sex offenders can be treated in order to reduce their risk of reoffending, she had not seen evidence that Daugherty's involvement in sex offender treatment had reduced his risk of reoffending. She stated that being unsuccessfully terminated from the sex offender treatment program in 1997 raised his risk of reoffending. She also testified that a person who had successfully completed a sex offender treatment program would be able to understand what they did, why they did it, identify specific thoughts and feelings that were happening during the offense, and formulate a solid plan as to how to prevent any offenses from happening again. Dr. Reed testified that Daugherty could discuss generally what an offense cycle was but he was not able to apply what he learned to himself, which was important for him to be able to prevent himself from reoffending. Dr. Reed

noted that, although Daugherty told her he learned that masturbating to deviant thoughts and fantasies reinforced them, he also admitted to continuing to do so up until at least a year before trial.

As for Daugherty's argument that he has been well behaved during the 25 years he has spent in prison, Dr. Reed noted that the offenses were committed in 1993 but that Daugherty admitted to continuing to have sexual thoughts and fantasies involving prepubescent children until at least a year before trial. Dr. Reed testified she was concerned that Daugherty's motivation for ceasing masturbation to thoughts of children was his grant of parole and the civil commitment case. She noted that he had been in treatment previously and been incarcerated for a significant amount of time. Additionally, despite his religious education and involvement in religion, Daugherty told Dr. Reed that he did not see that his masturbation to thoughts of children was problematic and that "he only stops now that he's going to have to be dealing with the civil commitment process."

As for Daugherty's argument that he was not diagnosed as a psychopath, Dr. Reed testified that while he did have some psychopathic traits, he was not considered a psychopath, the lack of that diagnosis being a positive or protective factor. However, she diagnosed him with antisocial personality disorder, which "is a big risk factor for reoffending." According to Dr. Reed, antisocial refers to behaviors that violate the rights of others, so the disorder is characterized by a pervasive pattern of the disregard for the rights of others. As evidence for this diagnosis, Dr. Reed

–15–

pointed to his illegal behavior during his childhood, including voyeurism, shoplifting, and setting fires. As an adult, Daugherty continued to shoplift and was arrested for public intoxication, driving while intoxicated, and sexual exploitation of a mental health service provider. Dr. Reed noted that there was some overlap between antisocial and psychopathic traits, but the main difference was personality: impaired empathy, narcissism, egotism, and generally a lack of conscience.

As for Daugherty's age, Dr. Reed testified that his age of 63 years old at trial was a positive or protective factor. She stated that as a person ages that person becomes a lower risk for reoffending and that Daugherty was in a category of lowered risk. Dr. Reed testified to some other positive factors, including Daugherty's participation in sex offender treatment, his relatively positive employment history, lack of major disciplinary infractions in prison, his educational achievements, and his finding of religious faith. She also noted he lacked a history of major mental illness and that he had a support system of his longtime friend K.B. However, Dr. Reed testified that she had concerns regarding K.B.'s struggles and issues of her own, as well as comments about Daugherty's offenses and victims she had made in her correspondence with Daugherty that Dr. Reed found denigrating in nature. She stated that while a support system was a positive factor, it might not necessarily reduce the risk of reoffending sexually.

We note that, despite the presence of positive or protective factors in the record, Dr. Reed's overall conclusions were that Daugherty had a congenital or

acquired condition that affected his emotional or volitional capacity and that predisposed him to commit predatory acts of sexual violence, and that he was likely to reoffend.

We have considered Daugherty's challenges to the sufficiency of the evidence and reviewed all evidence in the record. After reviewing the evidence in the light most favorable to the factfinder, we conclude a rational factfinder could have found Daugherty has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence beyond a reasonable doubt. *See In re Commitment of Hill*, 621 S.W.3d at 344. Additionally, in light of the entire record, we conclude "the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict," is not "so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *See In re Commitment of Stoddard*, 619 S.W.3d at 675. We overrule Daugherty's first and second issues.

### CONCLUSION

We affirm the trial court's judgment.

230334f.p05

/Nancy E. Kennedy/
NANCY KENNEDY
JUSTICE

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: THE COMMITMENT OF
SAMUEL MILTON DAUGHERTY

No. 05-23-00334-CV

On Appeal from the 283rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV2270001.
Opinion delivered by Justice
Kennedy. Justices Garcia and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of March, 2024.